**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
545 HALSEY LANE PROPERTIES, LLC,

                Plaintiff,

        -against-

TOWN OF SOUTHAMPTON; TOWN OF
SOUTHAMPTON PLANNING BOARD;
DENNIS FINNERTY; JOHN BLANEY;
GEORGE SKIDMORE; LARRY TOLER;
JOHN ZUCCARELLI; JACQUELINE
LOFARO; PHILIP A. KEITH; MICHELE
BERKOSKI, in her capacity as a Co-Executor of
the Estate of William A. Berkoski, Jr.;
JENNIFER L. CARUSO, in her capacity as a
Co-Executor of the Estate of William A.
Berkoski, Jr.; ROMAN ROTH; THOMAS
CONKLIN; WARREN TOPPING (a.k.a
JAEGGER TOPPING); ADAM HALSEY; LEE
FOSTER; JOHN L. HALSEY; LAWRENCE
HALSEY; HENRY KRASZEWSKI; JAMES
PIKE; KATHERINE KAZANAS; ANTHONY
PIAZZA; ARTHUR LUDLOW; KENNETH
TILLOTSON; MICHAEL WESNOFSKE;
SUSAN FALKOWSKI PARRY; and JOHN and
JANE DOES Nos. 1-6

                Defendants.
----------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
14-cv-800 (ADS)(GRB)

**APPEARANCES:**

**Neufeld & O'Leary**
*Attorneys for the Plaintiff*
370 Lexington Avenue
Suite 908
New York, NY 10017
      By:  David Samuel Julian Neufeld, Esq.
            Denis P. O'Leary, Esq., Of Counsel

**Devitt Spellman Barrett, LLP**
*Attorneys for the Defendants*
50 Route 111
Smithtown, NY 11787
    By:  David H. Arnsten, Esq., Of Counsel

**SPATT, District Judge.**

On February 6, 2014, the Plaintiff 545 Halsey Lane Properties, LLC (the "Plaintiff")

commenced this action pursuant to 42 U.S.C. § 1983 challenging two decisions by the Defendant

Southampton Town Planning Board (the "Planning Board") involving conditional approvals of

the Plaintiff's applications for a building permit for the construction of a barn and/or barns on its

property.

On April 3, 2014, the Defendants moved pursuant to Federal Rule of Civil Procedure

("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of subject matter

jurisdiction and failure to state a claim upon which relief can be granted.

For the reasons set forth below, the Court denies the motion.

## I.    BACKGROUND

Unless stated otherwise, the following facts are drawn from the complaint and construed

in a light most favorable to the non-moving party, the Plaintiff.

A.  The Parties

The Plaintiff is a New York limited liability company.

The Defendant Town of Southampton (the "Town of Southampton") is a municipal

corporation.

The Planning Board is a Board created by the Board of Southampton pursuant to New

York Town Law § 271.

The Defendant Dennis Finnerty ("Finnerty"), sued in his individual capacity, is and/or

was a member and Chairperson of the Planning Board at the relevant times herein.

The Defendant John Blaney ("Blaney"), sued in his individual capacity, is and/or was a member and Vice Chairperson of the Planning Board at the relevant times herein.

The Defendant George Skidmore ("Skidmore"), sued in his individual capacity, is and/or was a member of the Planning Board at the relevant times herein.

The Defendant Larry Toler ("Toler"), sued in his individual capacity, is and/or was a member of the Planning Board at the relevant times herein.

The Defendant John Zuccarelli ("Zuccarelli"), sued in his individual capacity, is and/or was a member of the Planning Board at the relevant times herein.

The Defendant Philip A. Keith ("Keith"), sued in his individual capacity, is and/or was a member of the Planning Board at the relevant times herein.

The Defendant Michele Berkoski, sued in her capacity as an Executor of the Estate of William A. Berkoski, Jr., having been issued Letters Testamentary by the Surrogate's Court of the County of Suffolk on or about May 12, 2011, is sued herein on account of the individual actions of William A. Berkoski, Jr. ("Berkoski"), who was a member of the Planning Board at the relevant times herein prior to his death on or about March 15, 2011.

The Defendant Jennifer L. Caruso, sued in her capacity as an Executor of the Estate of Berkoski, having been issued Letters Testamentary by the Surrogate's Court of the County of Suffolk on or about May 12, 2011, is sued herein on account of the individual actions of Berkoski.

The Defendant Roman Roth ("Roth"), sued in his individual capacity, is and/or was a member of the Town of Southampton's Agricultural Advisory Committee (the "AAC") at the relevant times herein.

The Defendant Thomas Conklin ("Conklin"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Warren Topping, also known as Jaegger Topping ("Topping"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Adam Halsey ("A. Halsey"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Lee Foster ("Foster"), sued in her individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant John L. Halsey ("J. Halsey"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Lawrence Halsey ("L. Halsey"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Henry Kraszewski ("Kraszewski"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant James Pike ("Pike"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Katherine Kazanas ("Kazanas"), sued in her individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Anthony Piazza ("Piazza"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Arthur Ludlow ("Ludlow"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Kenneth Tillotson ("Tillotson"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Michael Wesnofske ("Wesnofske"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Susan Falkowski Parry ("Parry"), sued in her individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendants John and Jane Doe Nos. 1 through 6 are presently unknown individuals or entities who may be liable to the Plaintiff.

B.  Factual Background

By deed dated February 26, 2003, the Plaintiff purchased a 40.747 acre parcel of property located in the Town of Southampton, known as Suffolk County Tax Map No. 900-105.000-0001-001.030 (the "Property").  The purchase price remitted by or on behalf of the Plaintiff for the Property was $15,150,000.

The Property is identified on a subdivision map known as the Map of Broadlands, approved by the Planning Board on July 3, 1980, and filed in the Office of the Suffolk County Clerk on August 29, 1980, as Map No. 6930.  All or part of the Property had been utilized as agricultural farmland since prior to the establishment of the Broadlands Subdivision.

In 1980, the prior owners of the Property, Raymond G. Wesnofske and Leonard Schulman (the "Grantors"), entered into an agreement with the Town pursuant to New York General Municipal Law § 247 that imposed certain understandings and agreements concerning the use of the Property.

The aforesaid agreement was memorialized within a Grant (the "Grant") which, following a public hearing, was authorized by the Town Board by Resolution dated August 16,

5

1980.  The Grant, filed in the Office of the Suffolk County Clerk, expressly reserved to the

Grantors and their "successors, heirs, legal representatives, and assigns" numerous property

rights, including future uses of, and rights to make improvements on, the Property.  The Plaintiff

is a successor in title and interest to the Grantors.

Under the terms of the Grant, in consideration for the subdivision and aforementioned

easement rights, the Grantors expressly retained and reserved for themselves and their successors

the right to utilize the Property for "some or all" of the following uses:

1. farming operations and activities, including soil preparation, cultivation, fertilization, irrigation, pest control, water and drainage control, farm buildings, all other normal and customary farming operations and the use of farm vehicles and equipment in connection therewith;

2. open, fallow, landscaped and wooded areas, with lanes, walkways, foot paths, and ponds or brooks;

3. recreational areas, for compatible recreational uses;

4. one single-family dwelling and customary accessory uses and structures incidental thereto; and

5. to erect drainage structures and utility lines on the Property.

The Grant further provided that the Grantors and their successors were not restricted from

constructing upon, maintaining, or utilizing the Property "to the extent specifically required or

useful for or in aid of" the retained and reserved property uses.

The Property is located in the R-80 Residential Zoning District and is also within an

Agricultural Overlay District ("AOD") established by the Town in 1972.  However, at the time

of the Grant, the Town Code (the "Town Code") did not restrict construction or development

within the AOD.  Subsequent to the execution of the Grant, the Town amended the Town Code

to limit construction on certain land located within the AOD to which "development rights" had

been transferred to the Town.  On such land, only structures "incidental to agricultural

production as the same is presently defined by § 301 of New York State Agricultural and Market Law" could be constructed. At no time was the Property the subject of a transfer of development rights as defined by the Town Code.

In 1994, the Town Code was amended to add § 330-51(A), which limited construction on land within the AOD that had been "preserved for agricultural purposes as a condition of subdivision or site plan approval by a grant of easement . . . ." The 1994 amendment to the Town Code prohibited all construction within the AOD except for structures permitted by the Town Board. The Town Board's permitting authority was limited to structures "customarily accessory and incidental to agricultural production as the same is or shall hereafter be defined in § 301 of the New York State Agricultural and Markets Law . . . ."

Permit applications to construct agricultural structures within the AOD were to be made to the Town Board and processed under the "same procedural requirements as set forth in Section 330-50D" and, in 1998, the Town Code was further amended to transfer this permitting authority from the Town Board to the Planning Board.

During 1996, a former owner of the Property sought to construct a single-family residence with certain accessory structures on the Property, and was directed to make an application to the Town Board. At the time of the application, the Town Board's permitting authority was limited by the Code to structures "incidental to agricultural production," and the Code prohibited the issuance of permits for structures "intended for human habitation." The application was considered by the Town Board, which also referred the matter to the Farmland Committee, a predecessor to the AAC, and the Planning Board for their respective reports and recommendations.

The Planning Board issued a report to the Town Board concluding that the use of the Property was not restricted to agricultural uses and that the Grant "sets forth the permitted uses, restrictions and conditions that must be adhered to" on the Property and recommended that a construction permit for the residence be issued. Concurrently, the Farmland Committee issued a report to the Town Board concluding that, pursuant to the Grant, the uses permitted on the Property expressly included, among other things, "agricultural, open space [and] recreational" uses and the erection of one single-family residence with accessory structures.

By Resolution dated December 23, 1997, the Town Board issued a permit for the construction of a single-family residence and accessory structures on the Property. The Plaintiff's predecessor-in-title to the Property subsequently constructed a residence and certain other structures on the Property.

After purchasing the Property in 2003, the Plaintiff placed a small unadorned baseball diamond, a children's recreational playground, and art sculptures on the Property. In March 2006, the Plaintiff sought to construct a barn on the Property. At the time of the application, the Plaintiff was utilizing a three acre portion of the Property for an orchard and intended to increase the size of the orchard and to add a vineyard, to a total minimum agricultural use of at least ten acres. The Plaintiff was directed to file an application for a permit with the Planning Board for site plan review. At the direction of the Planning Board, among others, the Plaintiff prepared a proposed site plan for an 11,250 square foot barn and attended a "work session." Thereafter, in response to comments and requests from the Planning Board, the Plaintiff provided two additional modifications to its proposed barn.

The Planning Board referred the application to the AAC. The AAC responded to the Planning Board and commented that the proposed size of the barn was "disproportionately large

for the proposed agricultural endeavor" and that "the ball field and playground equipment are not an agricultural use and removal of them should be a condition of any future approvals." The AAC's comments to the Planning Board made no reference to the Grant and/or its retained and reserved uses.

The Plaintiff addressed the AAC's comments, noting, among other matters, that (1) the ball field and playground equipment were recreational uses permitted by the Grant; (2) the Plaintiff intended to increase the size of the agricultural use of the Property consistent with the Grant; and (3) the proposed structure size was consistent with other permits issued for barn constructions in the Town.

The AAC's communications to the Planning Board also questioned what equipment would be stored inside the barn and asserted that the equipment identified by the Plaintiff was "essentially landscaping equipment," which the AAC maintained could not be stored on the Property. The Plaintiff subsequently relocated the proposed barn further north on the Property.

The AAC then commented that the new location would impact the "view shed" of other preserved farmland. However, no "view shed" agreement existed with regard to the Property, a fact acknowledged by the Planning Board.

The Plaintiff addressed the AAC's concerns regarding the size of the proposed barn by reviewing public records and preparing two studies, both of which confirmed that the density of the Plaintiff's proposed barn was significantly less than other barns on parcels within the AOD. One parcel identified in the studies was located across the street from the Property at 445 Halsey Lane, on which the Planning Board had approved 19,305 square feet of agricultural structures – more than 70% larger than that sought by the Plaintiff – situated on an agricultural reserve parcel of only 13.3 acres, less than one-third of the size of the Property.

After receipt of the Plaintiff's studies, the AAC provided a different explanation as to why the Plaintiff would not be permitted to construct a barn, claiming that the Property was not "in agricultural production" as defined in § 301 of the New York Agricultural and Markets Law. At the same time that the AAC concluded that the barn could not be built, it also recommended that the Plaintiff reduce the size of the barn to 2400 square feet on the 40.747 acre parcel.

In an attempt to minimize and mitigate its expenses and damages, the Plaintiff submitted another revised site plan, which reduced the size of the barn by approximately 30%; increased the size of the orchard to 10 acres; relocated the barn to the southwest corner of the Property as recommended by the AAC; and eliminated the proposed vineyard as recommended by the Town's Planning Division. Following another public hearing, the Plaintiff again modified its plan to accommodate the Planning Board's direction that the Plaintiff rotate the proposed barn so that the narrow end would face an adjacent landowner.

After further suggestions by the Planning Board, the Plaintiff submitted a seventh revised application, reducing the size of the barn from 11,250 square feet to 7,200 square feet and relocating it to a location on the Property recommended by the Town's Planning Division.

By Resolution dated February 10, 2011, the Planning Board rejected the Plaintiff's application. Instead, the Planning Board approved its own version of an application that had never been made, for a barn of not more than 2,400 square feet on the 40.747 acre Property. The Planning Board imposed conditions that, among other things, required the Plaintiff to (1) remove the children's recreational playground equipment on the Property; (2) remove the ball field on the Property; (3) agree not to store landscaping or lawn equipment anywhere on the Property; and (4) provide the Town with different and broader inspection rights on the Property than those previously agreed to in the Grant. The Planning Board indicated that it reduced the barn size

because it "must" rely on the AAC's recommendation. The Planning Board also asserted that the existing orchard did not meet the threshold of commercial agricultural production or the definition of land use in agricultural production contained in Agriculture and Market Law § 301.

The Plaintiff subsequently commenced a state court proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR") to challenge the February 2011 decision of the Planning Board. That Article 78 proceeding is pending.

After discussions with the Town's Planning Division and others, the Plaintiff submitted another "alternate" application which proposed two separate barns on the Property. In particular, the alternate plan sought one barn of 4,000 square feet at the southern portion of the Property and another barn of 2,000 square feet on the northern portion of the Property. The Planning Board referred this alternate application to the AAC. The AAC then required from the Plaintiff verification of *bona fide* agricultural use and requested that new and additional covenants and restrictions be required to assure future compliance, including inspections.

By Resolution dated September 27, 2012, the Planning Board denied the Plaintiff's application. Similar to the first application, the structures applied for in the alternate site plan submission were not approved. Instead, the Planning Board "approved" the construction of one 2,400 square foot barn with numerous conditions. The Plaintiff then commenced a second CPLR Article 78 proceeding challenging the September 2012 decision. That Article 78 proceeding is also pending.

On February 6, 2014, the Plaintiff commenced the instant action pursuant to 42 U.S.C. § 1983. The Plaintiff alleges (1) a violation of its Fourteenth Amendment right to Substantive Due Process; (2) a violation of its Fourteenth Amendment right to Equal Protection under the law;

and (3) a violation of the Fifth Amendment's takings clause. The Plaintiff has since withdrawn its takings clause claim.

On March 26, 2014, the Defendants moved pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

On April 28, 2014, a separate action, Docket No. 14-cv-2368, was reassigned to this Court as related to the instant action. The reassigned action is premised upon the denial of the Plaintiff's appeal to the Town of Southampton Zoning Board of Appeals from a decision of the Town Building Inspector denying the Plaintiff's request for a building permit to allow it to build a regulation-sized basketball court on the Property.

On May 30, 2014, the Defendants in Docket No. 14-cv-2368 moved to dismiss the complaint therein pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

On June 13, 2014, the Plaintiff moved pursuant to Fed. R. Civ. P. 42 to consolidate the two actions.

For the following reasons, the Court (1) denies the motion to dismiss in this action; (2) reserves decision on the motion to dismiss in Docket No. 14-cv-2368; and (3) reserves decision on the motion to consolidate.

## II.     DISCUSSION

A. The Rule 12(b)(1) Standard

 "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The standard for reviewing a 12(b)(1) motion

to dismiss is essentially identical to the 12(b)(6) standard, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. at 113.

B.  Ripeness

Article III, Section 2 of the U.S. Constitution restricts federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2; see Vt. Right to Life Comm., Inc. v. Sorrell, 221 F.3d 376, 381 (2d Cir. 2000).  The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808, 123 S. Ct. 2026, 2030, 155 L. Ed. 2d 1017 (2003) (internal quotation marks and citation omitted).  Its purpose is to "ensure that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III" and "prevent[ ] a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur."  Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 90 (2d Cir. 2002).

In determining whether a claim that challenges a law is ripe for review, the Court must consider whether the issue is fit for adjudication as well as the hardship to the plaintiff that would result from withholding review. Abbott Labs. v. Gardner, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977); Marchi v. Bd. of Coop. Educ. Servs. of Albany, 173 F.3d 469, 478 (2d Cir. 1999).

The Supreme Court has established a two-pronged test to determine whether a claim is ripe for takings-type claims. Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of

Johnson City, 473 U.S. 172, 186, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985). The first prong requires that the government entity charged with implementing the regulations in question has reached a "final decision." Id. at 186, 105 S. Ct. at 3116; see Honess 52 Corp. v. Town of Fishkill, 1 F. Supp. 2d 294, 300-01 (S.D.N.Y. 1998) (finding that the court "cannot determine whether a plaintiff has been deprived of property, arbitrarily or otherwise, until it has a final decision before it"). The second prong requires the plaintiff to have sought compensation through "reasonable, certain and adequate" state provisions for obtaining compensation. Williamson Cnty., 473 U.S. at 194, 105 S. Ct. 3120 (citation and internal quotation marks omitted).

Although the ripeness test in Williamson County involved a takings claim, the ripeness requirement of Williamson County has also been extended by the Second Circuit to Equal Protection and Due Process claims asserted in the context of land use challenges. See Dougherty, 282 F.3d at 88–89 ("The ripeness requirement of Williamson, although announced in a takings context, has been extended to equal protection and due process claims asserted in the context of land use challenges."); Southview Assocs. Ltd. v. Bongartz, 980 F.2d 84, 96–97 (2d Cir. 1992) (applying ripeness test to Substantive Due Process claims); Country View Estates @ Ridge LLC v. Town of Brookhaven, 452 F. Supp. 2d 142, 148–50 (E.D.N.Y. 2006)(applying ripeness test to Equal Protection and Due Process claims).

In Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 348–49 (2d Cir. 2005), the Second Circuit explained the considerations underlying prong-one ripeness — namely, the "final decision" requirement:

> Four considerations, all of which motivate our decision today, undergird prong-one ripeness. First . . . the Williamson County Court reasoned that requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record. Second, and relatedly, only if a property owner has

exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel. Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes. Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible. Finally, since Williamson County, courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.

402 F.3d at 348–49 (citations omitted). As the Second Circuit has noted, "[t]he Williamson County ripeness test is a fact-sensitive inquiry that may, when circumstances warrant, be applicable to various types of land use challenges." Id. at 350.

Here, the Defendants contend that the Plaintiff's Equal Protection "class-of-one" claim is not ripe for adjudication in light of the fact that the Plaintiff has instituted Article 78 proceedings seeking to remediate the perceived impropriety of the Planning Board's conditional approvals. The Court disagrees.

The Plaintiff has established that the Resolutions issued by the Planning Board, which are not appealable to the Town's Zoning Board of Appeals, constitute "final, definitive position[s] as to how it could use [its] property," see Murphy, 402 F.3d at 348 (citing Williamson, 473 U.S. at 186), sufficient to establish the ripeness of its Equal Protection claim. See Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury, No. 09–CV–5195 (DRH)(ETB) , 2012 WL 1392365, at *12 (E.D.N.Y. Apr. 23, 2012). Contrary to the Defendants' contention, the Plaintiff is not required to bring an Article 78 proceeding in order for the instant action to be deemed ripe:

The [aggrieved party]'s failure to commence an Article 78 proceeding to request review of the Resolution does not render its claims unripe for judicial review given that the administrative process, *per se*, had run its course.

Id. at *7.

Further, the Defendants' reliance on Lewis v. Carrano, 844 F. Supp. 2d 325 (E.D.N.Y. 2012) is misplaced. There, the aggrieved party commenced a 42 U.S.C. § 1983 action, alleging that a town had improperly refused to either approve or reject a permit application. Here, by contrast, the Planning Board adopted two final Resolutions, which effectively denied the Plaintiff's applications and conditionally approved a different version of those applications.

As the Plaintiff was not required to commence an Article 78 proceeding in order for the instant action to be deemed ripe, the fact that it elected to do so does not render its otherwise ripe claims to be unripe. Accordingly, the Court declines to dismiss the Plaintiff's Equal Protection Claim on the basis of ripeness.

C. The Rule 12(b)(6) Standard

Under the now well-established Twombly standard, a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id.

(quoting Iqbal, 556 U.S. at 663, 129 S. Ct. 1937). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 664, 129 S. Ct. 1937). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 664, 129 S. Ct. 1937.

Finally, "in adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (quoting Allen v. WestPoint–Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)).

D.  The Substantive Due Process Claims

Causes of action based on alleged violations of "Due Process" are "based on the Fourteenth Amendment, as implemented by section 1983, and require[] the existence of a federally protectable property right and the denial of such a right in the absence of either procedural or substantive due process." Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999); see also Rackley v. City of New York, 186 F. Supp. 2d 466, 479 (S.D.N.Y. 2002). The United States Constitution generally does not create property interests. Therefore, this Court, in applying the entitlement test, looks to "existing rules or understandings that stem from an independent source such as state law to determine whether a claimed property right rises to the level of a right entitled to protection under the substantive due process doctrine." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 130 (2d Cir. 1998)(internal quotation marks omitted)

(citing Brady v. Town of Colchester, 863 F.2d 205, 212 (2d Cir. 1988)(quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972))). Accordingly, in this case, the Court turns to New York State law to determine whether the Plaintiff has a protectible property right.

In assessing this issue, the Court is mindful of the general proscription that "federal courts should not become zoning boards of appeal to review nonconstitutional land[-]use determinations by the [C]ircuit's many local legislative and administrative agencies." Sullivan v. Town of Salem, 805 F.2d 81, 82 (2d Cir. 1986). Indeed, "the Due Process Clause does not function as a general overseer of arbitrariness in state and local land-use decisions; in our federal system, that is the province of the state courts." Zahra v. Town of Southold, 48 F.3d 674, 680 (2d Cir. 1995).

"In order for an interest in a particular land-use benefit to qualify as a property interest for the purposes of the . . . due process clause[,] a landowner must show a 'clear entitlement' to that benefit." O'Mara v. Town of Wappinger, 485 F.3d 693, 700 (2d Cir. 2007)(citing Clubside, Inc. v. Valentin, 468 F.3d 144, 152 (2d Cir. 2006)). A mere "abstract need or desire" for the benefit is insufficient. RRI Realty Corp. v. Inc. Vill. of Southampton, 870 F.2d 911, 915 (2d Cir. 1989)(internal quotation marks omitted)(quoting Roth, 408 U.S. at 577, 92 S. Ct. 2709). This "clear entitlement" test must be applied with "considerable rigor." Id. at 918.

The test "focuses on the extent to which the deciding authority may exercise *discretion* in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision." Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996) (quoting Zahra, 48 F.3d at 680)(internal quotation marks omitted); see also Natale, 170 F.3d at 263 ("[E]ntitlement turns on whether the issuing authority . . . is required to issue [a permit] upon ascertainment that

certain objectively ascertainable criteria have been met."); Walz v. Town of Smithtown, 46 F.3d

162, 168 (2d Cir. 1995)(the homeowner had a property interest in an excavation permit because

the superintendent of highways had no discretion to decline to issue it if the application stated the

nature, location, extent and purpose of the proposed excavations); Gagliardi v. Vill. of Pawling,

18 F.3d 188, 192–93 (2d Cir. 1994) (landowners had no property interest in enforcement of

zoning laws for adjacent property, since the municipal officials had broad discretion in

determining whether to grant or deny building permit, site plan, and variances); RRI Realty

Corp., 870 F.2d at 918–19 (no property interest existed in a building permit since the town

officials had wide discretion to either grant or deny the permit). Even if "objective observers

would estimate that the probability of [obtaining the relief sought] was extremely high, the

opportunity of the local agency to deny issuance suffices to defeat the existence of a federally

protected property interest." RRI Realty Corp., 870 F.2d at 918.

Here, the Court must first identify the potential property right of which the Plaintiff was

allegedly deprived. "[A] property interest can sometimes exist in what is *sought* — in addition

to the property interest that exists in what is *owned* — provided there is a 'legitimate claim of

entitlement' to the benefit in question.'" Zahra, 48 F.3d at 680 (citations omitted). Again,

whether the Plaintiff possesses a protected property right interest in the proposed structure turns

on whether, under applicable state law, "absent the alleged denial of due process, there is either a

certainty or a very strong likelihood that the application would have been granted." Walz, 46

F.3d at 168 (quoting Yale Auto Parts v. Johnson, 758 F.2d 54, 59 (2d Cir. 1985))(internal

quotation marks omitted).

Here, the Plaintiff alleges a constitutionally protected property interest, under General Municipal Law § 247 and the Grant, in the barn which the Plaintiff sought to erect. The Plaintiff points out that (1) agricultural structures are exempted from site plan review by Town Code § 330-181(A)(2) and (2) some grants entered into by the Town with other property owners specifically conditioned the property owners' reserved rights on site plan approval and/or certain provisions of the Town Code, thereby suggesting that such approval and compliance was not required here. In short, at the motion to dismiss stage, the Court finds that these allegations are sufficient to satisfy the "property interest" requirement of a Substantive Due Process claim. However, at this time, the Court makes no determination as to any potential conflict between the General Municipal Law and certain provisions of the Town Code.

In order to meet the second prong of a Substantive Due Process claim, a plaintiff must show that "defendants infringed on [its] property right in an arbitrary or irrational manner." Cine SK8, Inc. V. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007). In particular, the plaintiff must show the government's infringement was "'arbitrary,' 'conscience-shocking,' or 'oppressive in the [sic] constitutional sense,' not merely 'incorrect or ill-advised.'" Ferran v. Town of Nassau, 471 F.3d 363, 369–70 (2d Cir. 2006) (quoting Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994)); see also Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 505 (2d Cir. 2001)(alteration in original)("As we have held numerous times, substantive due process 'does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit . . . . [Its] standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.'" (quoting Natale, 170 F.3d at 263).

"In the zoning context, a government decision regulating a landowner's use of his property offends substantive due process if the government action is arbitrary or irrational. Government regulation of a landowner's use of his property is deemed arbitrary or irrational, and thus violates his right to substantive due process, only when government acts with no legitimate reason for its decision." Southview Assocs.., Ltd. v. Bongartz, 980 F.2d 84, 102-03 (2d Cir. 1992) (citations and internal quotation marks omitted); see also Merry Charters, LLC v. Town of Stonington, 342 F. Supp. 2d 69, 78 (D. Conn. 2004)(explaining that "denial by a local zoning authority violates substantive due process standards only if the denial 'is so outrageously arbitrary as to constitute a gross abuse of governmental authority'")(quoting Natale, 170 F.3d at 263).

For instance, in the context of a Substantive Due Process claim against the Town of Colchester where zoning was at issue, the Second Circuit reversed a grant of summary judgment to the Town where, among other things, it "had no authority under state law" to take certain actions with respect to plaintiffs' "protected property interest in the commercial use of their property." Brady, 863 F.2d at 215–16. The Second Circuit explained that under these circumstances, a "trier of fact could conclude that there was no rational basis for the [Town's zoning board's] actions, and that, as a result, the [zoning board] violated [the] appellants' rights to substantive due process." Id. (citation and internal quotation marks omitted).

Here, the Defendants argue that the Plaintiff fails to allege any conduct that could plausibly satisfy this standard. The Court disagrees. For example, the Plaintiff alleges that the Defendants arbitrarily and without explanation required the Plaintiff to submit to site plan approval; refused to permit the Plaintiff to erect structures permissible under the Grant which complied with the Town Code's dimensional requirements; and required the Plaintiff, as a

condition of erecting the proposed barn, to remove certain improvements permitted under the Grant, including a recreational playground, baseball diamond, art installations, and landscaping, and to relinquish its right to store landscaping equipment on the Property.

Accepting the Plaintiff's facts as true and construing them in a light most favorable to it, the Court concludes that the Plaintiff has adequately stated a plausible claim for denial of its Substantive Due Process based upon alleged conduct that was "'arbitrary,' 'conscience shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'" Ferran, 471 F.3d at 369–70; see e.g., Koncelik v. Town of East Hampton, 781 F. Supp. 152, 158 (E.D.N.Y. 1991)(denying dismissal of Procedural Due Process claim in zoning case where planning board decisions allegedly were, among other things, arbitrary and capricious and in contravention of the town code). Accordingly, the Court denies the Defendants' motion to dismiss the Substantive Due Process claim.

E.  The Equal Protection "Class–of–One" Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394, 72 L. Ed. 2d 786 (1982)). In light of the Clause's purpose to "'secure every person within the State's jurisdiction against intentional or arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents,'" Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75, 145 L. Ed. 2d 1060 (2000)(quoting Sioux City Bridge Co. v. Dakota Cnty., Neb., 260 U.S. 441, 445, 43 S. Ct. 190, 67 L. Ed. 340

(1923)(citation and internal quotations marks omitted)), the Supreme Court has recognized that "successful equal protection claims [may be] brought by a 'class of one.'" Id., 120 S. Ct. at 1074.

At the outset, the Court acknowledges that other "[c]ourts, including the Second Circuit, have repeatedly cautioned about the danger of ordinary disputes between a citizen and a municipality — whether it be about land use, licenses, inspections, or some other regulatory or investigative function of local governments — being transformed into federal lawsuits by an incorrect, overexpansive theory of class-of-one liability." Crippen v. Town of Hempstead, No. 07–CV–3478 (JFB)(ARL), 2013 WL 1283402, at *7 (E.D.N.Y. Mar. 29, 2013); see also Bizzarro v. Miranda, 394 F.3d 82, 88–89 (2d Cir. 2005) ("Olech does not empower federal courts to review government actions for correctness. Rather, an Olech-type equal protection claim focuses on whether the official's conduct was rationally related to the accomplishment of the work of their agency."); Geinosky v. City of Chi., 675 F.3d 743, 747 (7th Cir. 2012)("Courts have understood that if class-of-one claims are not defined appropriately, they might turn many ordinary and inevitable mistakes by government officials into constitutional violations and federal lawsuits.");

In the same vein, see Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1216–17 (10th Cir. 2011) ("We have approached class-of-one claims with caution, wary of turning even quotidian exercises of government discretion into constitutional causes. . . . These concerns are magnified with challenges to low-level government decision-making, which often involves a great deal of discretion. The latitude afforded police officers, . . . zoning officials, and other, similar government actors necessarily results in a sizeable amount of random variation in outcome. If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed.")(citation and internal quotation marks omitted); Rectrix Aerodrome

Ctrs., Inc. v. Barnstable Mun. Airport Comm'n., 610 F.3d 8, 16 (1st Cir. 2010)("Drawing distinctions is what legislators and regulators do every day: without this comparability sieve, every routine governmental decision at the state and local level — of which there are millions every year —could become a class-of-one case in federal court."); Cordi–Allen v. Conlon, 494 F.3d 245, 252 (1st Cir. 2007)(citations omitted)("The burden that a class of one plaintiff must carry at the summary judgment stage is considerably heavier than a mere showing that others have applied, with more auspicious results, for the same benefit that he seeks.  Were the law otherwise, the federal court would be transmogrified into a supercharged version of a local zoning board — a zoning board on steroids, as it were."); McDonald v. Vill. of Winnetka, 371 F.3d 992, 1009 (7th Cir. 2004) ("Even if [the plaintiff] was wronged here, we do not believe that he has shown the wrong to be discriminatory in nature.  Every time an actor commits a tort, he may be treating the victim differently than he frequently treats others, simply because tortious conduct is by nature a departure from some norm.  Nonetheless, the purpose of entertaining a 'class of one' equal protection claim is not to constitutionalize all tort law nor to transform every claim for improper provision of municipal services or for improper conduct of an investigation in connection with them into a federal case.")(citations omitted); Crippen, 2013 WL 1283402, at *8 ("[P]laintiffs cannot attempt to federalize every such dispute with a municipality by simply uttering the magic words 'class-of-one,' without also pointing to any evidence that all other similarly situated individuals received more favorable treatment than the plaintiff.").

     With this principle in mind and relying on Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008), the Defendants contend that the Plaintiff's "class of one" claim must be dismissed as a matter of law because the Defendants' actions were discretionary.

Engquist held that "the class-of-one theory of equal protection has no application in the public employment context." Id. at 607, 128 S. Ct. 2156.  The Supreme Court reasoned:

> [T]he class-of-one theory of equal protection — which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review — is simply a poor fit in the public employment context.  To treat employees differently is not to classify them in a way that raises equal protection concerns.  Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship.  A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action.

Id. at 605, 128 S. Ct. 2155.

"Post Engquist, some courts extrapolated the case's holding to bar equal protection class-of-one claims whenever the government's actions were deemed discretionary, irrespective of whether the plaintiff was a government employee or not." Aliberti v. Town of Brookhaven, 876 F. Supp. 2d 153, 162 (E.D.N.Y. 2012); accord, e.g., Catcove Corp. v. Heaney, 685 F. Supp. 2d 328, 333 (E.D.N.Y. 2010)("[P]ost-Engquist, a plaintiff who proceeds on a class of one claim must allege that 'the differential treatment resulted from non-discretionary state action.'")(quoting Alfaro v. Labrador, No. 06-CV-1470 (JS)(WDW), 2009 WL 2525128, at *8–9 (E.D.N.Y. Aug. 14, 2009)); DeFabio v. East Hampton Union Free Sch. Dist., 658 F. Supp. 2d 461, 495 (E.D.N.Y. 2009)(holding that the Engquist decision "appears to foreclose as a matter of law a 'class of one' claim to the discretionary decisions" made by school personnel); Crippen v. Town of Hempstead, 07-CV-3478 (JFB)(ARL), 2009 WL 803117, at *6 (E.D.N.Y. Mar. 25, 2009)("[S]everal courts have applied Engquist to bar class-of-one claims in connection with discretionary decisions that are outside the government-employee context.").

However, in Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135 (2d Cir. 2010), the Second Circuit noted that it had "yet to address whether Engquist's prohibition is limited to the

public employment context, or whether it extends to other types of discretionary government behavior." Id. at 141. The Court discussed the split among its sister Circuits on this issue and, joining the Seventh Circuit Court of Appeals, held that "Engquist does not bar all class-of-one claims involving discretionary state action." Id. at 142.

Critical to the Second Circuit's decision was the reasoning underlying the Engquist Court's decision, to wit: a "[long held] . . . view that there is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'" Engquist, 553 U.S. at 598, 128 S. Ct. 2151 (second alteration in original)(quoting Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 896, 81 S. Ct. 1743, 1749, 6 L. Ed. 2d 1230 (1961)); Analytical Diagnostic, 626 F.3d at 142.

"Accordingly, in the wake of Analytical Diagnostic, class-of-one claims are not *ipso facto* barred simply because the government's conduct was discretionary." Aliberti, 876 F. Supp. 2d. at 162; see also Rittenhouse Entertainment, Inc. v. City of Wilkes–Barre, No. 3:11-CV-617 (ARC), 2012 WL 1988785, at *3 (M.D. Pa. June 4, 2012)("Engquist stands only for the narrow proposition that 'the class-of-one theory of equal protection does not apply in the public employment context.' . . . The instant case, however, does not involve public employment or the government's role as proprietor, and thus the reasoning from Engquist is not applicable."); Missere v. Gross, 826 F. Supp. 2d 542, 560 n. 13 (S.D.N.Y. 2011) (noting that the Second Circuit rejected an overly broad reading of Engquist in Analytical Diagnostic based on the Supreme Court distinguishing "between government acting as proprietor and manager of its own operations (e.g., as employer) and government acting as regulator or lawmaker").

Although, as the Defendants point out, the <u>Analytical Diagnostic</u> court also stated that "there may be some circumstances where <u>Engquist</u> is properly applied outside of the employment context," <u>Analytical Diagnostic</u>, 626 F.3d at 142, "those circumstances do not include cases where the government exercises its regulatory power,"<u>Aliberti</u>, 876 F. Supp. 2d at 163. Indeed, "given the reasoning in <u>Analytical Diagnostic</u>, [the P]laintiff['s] claim is not barred by <u>Engquist</u> because [the P]laintiff[] w[as] not [a] government employee[] and the Town was exercising its regulatory power. Accordingly, [the P]laintiff['s] class-of-one claim may not be dismissed on the ground that the government's conduct was discretionary." <u>Id.</u>

The Court now turns to the elements of an Equal Protection "class of one" claim. "[T]o succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." <u>Clubside, Inc. v. Valentin</u>, 468 F.3d 144, 159 (2d Cir. 2006)(citation omitted)(internal quotation marks omitted).

In <u>Giordano v. City of New York</u>, 274 F.3d 740 (2d Cir. 2001), the Second Circuit held that a plaintiff alleging an Equal Protection "class-of-one" claim is required to show "not only 'irrational and wholly arbitrary' acts, but also intentional disparate treatment." <u>Id.</u> at 751 (citations omitted). – "that is, demonstrate the decision[-]makers were aware that there were other similarly-situated individuals who were treated differently." <u>Analytical Diagnostic</u>, 626 F.3d at 143.

With respect to a comparator in a "class-of-one" case, "a plaintiff must show more than a general similarity between her and the comparator . . . as in cases where discrimination based on

membership in a protected class is claimed." Ferguson v. City of Rochester Sch. Dist., 485 F. Supp. 2d 256, 259 (W.D.N.Y. 2007)(citing Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000)(noting that in the context of a Title VII race discrimination case, the facts and circumstances between the plaintiff and the comparator need only closely resemble each other, not be identical)).  Thus, unlike a discrimination case where differences in the treatment of similar persons raises an inference that an individual from a protected class was impermissibly treated, in a "class of one" case,

> the existence of persons in similar circumstances who received more favorable treatment than the plaintiff is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose - whether personal or otherwise - is all but certain.

Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005), overruled on other grounds, Appel v. Spiridon, 531 F.3d 138, 141 (2d Cir. 2008).

As a result, in order to succeed on a "class-of-one" claim, "the . . . similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." Neilson, 409 F.3d at 105; see Clubside, 468 F.3d at 159 ("We have held that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."); Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002) ("In order to succeed, [plaintiffs] must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects."); Missere, 826 F. Supp. 2d at 561 ("Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.").  "Generally, whether parties are similarly situated is a fact-intensive inquiry." Clubside, 468 F.3d at 159.

"Class of one claims have arisen in cases involving enforcement of zoning regulations when an individual is denied a permit while other individuals who are similarly situated have been granted that benefit." 33 Seminary LLC v. City of Binghamton, 869 F. Supp. 2d 282, 308 (N.D.N.Y. 2012)(citing Caldarola v. Town of Smithtown, CV 09-272 (SJF)(AKT), 2010 WL 6442698, at *10 (E.D.N.Y. July 14, 2010) report and recommendation adopted, 09-CV-272 (SJF)(AKT), 2011 WL 1336574 (E.D.N.Y. Apr. 4, 2011).

In this case, the complaint identifies the following groups of comparators: (1) one of the Plaintiff's predecessors -in-title who was permitted to construct a single-family residence on the Property notwithstanding the Town Code's prohibition of the same, Ossler v. Village of Norridge, 557 F. Supp. 219, 223 (N.D.Ill.1983)(upheld equal protection claim to effect that the defendants denied the plaintiff's rezoning but rezoned the property for a later owner) and (2) numerous properties within the AOD in which the Town permitted the owners to erect agricultural structures with greater building density. The Plaintiff also alleges that the Defendants took a contrary position in a separate litigation, Mantello v. Finnerty, No. 05-20339 (Sup. Ct. Suffolk Cty.), in which the Planning Board defended a permit it had issued to another property owner by asserting that the Town Code does not prohibit the construction of agricultural structures on AOD properties of less than seven acres in size and that pre-existing agricultural use is not required in order to obtain approval for an agricultural structure.

Accepting the allegations as true and viewing them most favorably to the Plaintiff, the Court finds that the complaint sufficiently alleges that the Plaintiff's property was treated differently than similarly situated properties. Bayou Fleet Partnership, LLC v. St. Charles Parish, 10-cv-1557 (ILRL) 2011 WL 2680686, at *4 (E.D. La. 2011)(the plaintiff asserted that the neighboring property was used for the same purposes as the plaintiff's property in the same zone

but when the neighbor applied to be re-zoned, requests were granted while the plaintiff's were repeatedly denied); see also Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, 815 F. Supp. 2d 679, 699 (S.D.N.Y. 2011)(the plaintiff's compared "apples to apples" and provided facts alleging that other projects of similarly-large size were approved and built without being challenged by the defendants to the extent that it is plausible that developments of the size alleged by the plaintiffs would have comparable impacts on water, traffic, sewer, and community character concerns). "The defendants may ultimately prevail on their assertion that the others weren't really similar, but this is in substance a denial of the complaint's factual allegations. The factual dispute cannot properly be resolved on a motion to dismiss." 33 Seminary LLC, 869 F. Supp. 2d at 309 (quotation marks and citation omitted).

With regard to the second element of a "class-of-one" claim, the Plaintiff must adequately plead that any differential treatment was without a rational basis. See Olech, 528 U.S. at 564, 120 S. Ct. 1073 (allowing Equal Protection claims brought by "class-of-one" where the plaintiff alleged, among other things, that "there is no rational basis for the difference in treatment"). Here, the Court notes that the Plaintiff alleges that no rational basis supports not permitting the Plaintiff to erect its proposed barn, while (1) permitting the Plaintiff's predecessor-in-interest to erect a single-family residence, (2) taking a directly contrary legal position in the Mantello litigation, or (3) allowing landowners nearby to erect barns with greater building density,.

Therefore, this Court holds that the complaint alleges sufficient facts to support the second prong of the Equal Protection pleading requirement – that there was "no rational basis for the difference in treatment." Accordingly, the Plaintiff has properly plead a cause of action for

violation of its Equal Protection rights under a "class of one" theory, and the Court declines to dismiss this cause of action.

F.   The Alleged Personal Involvement of the Individual Defendants

As to the Individual Defendants, it is not enough for the Plaintiff to allege a violation of the Constitution or federal law under Section 1983.  The Second Circuit has long recognized that a plaintiff asserting claims under § 1983 must allege the personal involvement of each individual defendant acting under color of state law. Back v. Hastings On Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004)("Additionally, '[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'")(quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977)).

Here, there is little doubt that the members of the Planning Board and the AAC acted under color of state law at the relevant times.  As to personal involvement of the Individual Defendants, the complaint is predicated upon two resolutions which the Planning Board approved, and, thus, the current and former members of the Planning Board named in this lawsuit cannot avoid § 1983 liability on this basis.

The Defendants' assertion that the AAC members cannot be individually liable because its recommendations are not binding upon the Planning Board is belied by the Planning Board's assertion that it "must" rely on the AAC recommendation.  Regardless, whether the Planning Board was in fact duty-bound to follow the AAC need not be decided at this juncture, as the Court finds that the Plaintiffs have plead sufficient involvement on the part of the AAC members.  The fact that the AAC may not be a separate branch of Town government nor perform a "government function" under Section 102(2) of the Public Officers Law is legally irrelevant.

The Individual Defendants also assert a qualified immunity defense. Qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Ying Jing Gan v. City of New York, 996 F.2d 522, 531 (2d Cir. 1993)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

Further, a defendant asserting a qualified immunity defense on a motion to dismiss "faces a formidable hurdle . . . and is usually not successful." Field Day, LLC v. County of Suffolk, 463 F.3d 167, 191–92 (2d Cir. 2006). The defense will succeed only where entitlement to qualified immunity can be established "based [solely] on facts appearing on the face of the complaint." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004). For this reason, a motion to dismiss "is a mismatch for immunity and almost always a bad ground of dismissal." Id. (quoting Jacobs v. City of Chicago, 215 F.3d 758, 775 (7th Cir. 2000)(Easterbrook, J., concurring in part)).

In this case, the Individual Defendants seek qualified immunity because they purportedly undertook discretionary actions. However, as previously stated, the Plaintiff has adequately alleged that, in fact, the Defendants lacked discretion to require site plan approval for the Plaintiff's proposed barn.

As the Second Circuit held in Brady, "[i]t is well settled that enforcement of an otherwise valid zoning ordinance violates the Constitution . . . if . . . the decision of the particular zoning body is arbitrary, . . . or if the ordinance is applied or enforced with a discriminatory intent or purpose." 863 F.2d at 217 (quotation marks and citation omitted). Therefore, the Court concludes that the Individual Defendants are not entitled to the defense of qualified immunity in the event that they are found to have violated the Plaintiff's Fourteenth Amendment Rights.

### G. Monell Liability

Pursuant to the Supreme Court's holding in <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a municipal entity like the Defendant Town may be held liable under 42 U.S.C. § 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." <u>Id.</u> at 694, 98 S. Ct. 2018; <u>see also</u> <u>Harper v. City of New York</u>, 424 Fed. Appx. 36, 38 (2d Cir. 2011)(finding that in order to impose liability on a government entity under 42 U.S.C. § 1983, a plaintiff must "show two basic elements: (1) 'the existence of a municipal policy or custom ...' and (2) 'a causal connection — an affirmative link — between the policy and the deprivation of his constitutional rights.'")(quoting <u>Vippolis v. Vill. of Haverstraw</u>, 768 F.2d 40, 44 (2d Cir. 1985)).

"The policy or custom need not be memorialized in a specific rule or regulation." <u>Kern v. City of Rochester</u>, 93 F.3d 38, 44 (2d Cir. 1996) (citing <u>Sorlucco v. N.Y.C. Police Dep't</u>, 971 F.2d 864, 870 (2d Cir. 1992)).  Instead, such municipal policies "include[ ] the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>Connick v. Thompson</u>, —— U.S. ——, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (citation omitted).

Here, the Court finds that the authority granted by the Town to the Planning Board makes the Town liable for any unconstitutional acts of the Planning Board that caused injury to the Plaintiffs.  Therefore, the Court declines to dismiss the complaint as against the Town with regard to <u>Monell</u> liability.

### III.    CONCLUSION

For the foregoing reasons, the Court denies the Defendants' motion to dismiss the

complaint.  The Court reserves decision on the motion to dismiss in Docket No. 14-cv-2368; and

reserves decision on the motion to consolidate.


**SO ORDERED.**

Dated: Central Islip, New York
August 19, 2014

_____*Arthur D. Spatt*_____
   ARTHUR D. SPATT
United States District Judge