**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

545 HALSEY LANE PROPERTIES, LLC,

                    Plaintiff,

             -against-

TOWN OF SOUTHAMPTON; TOWN OF
SOUTHAMPTON PLANNING BOARD;
DENNIS FINNERTY; JOHN BLANEY;
GEORGE SKIDMORE; LARRY TOLER;
JOHN ZUCCARELLI; JACQUELINE
LOFARO; PHILIP A. KEITH; MICHELE
BERKOSKI, in her capacity as a Co-Executor of
the Estate of William A. Berkoski, Jr.;
JENNIFER L. CARUSO, in her capacity as a
Co-Executor of the Estate of William A.
Berkoski, Jr.; ROMAN ROTH; THOMAS
CONKLIN; WARREN TOPPING (a.k.a
JAEGGER TOPPING); ADAM HALSEY; LEE
FOSTER; JOHN L. HALSEY; LAWRENCE
HALSEY; HENRY KRASZEWSKI; JAMES
PIKE; KATHERINE KAZANAS; ANTHONY
PIAZZA; ARTHUR LUDLOW; KENNETH
TILLOTSON; MICHAEL WESNOFSKE;
SUSAN FALKOWSKI PARRY; and JOHN and
JANE DOES Nos. 1-6,

                    Defendants.

--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
14-cv-800 (ADS)(AYS)

<u>**APPEARANCES:**</u>

**Neufeld & O'Leary**
*Attorneys for the Plaintiff*
370 Lexington Avenue
Suite 908
New York, NY 10017
        By:  David Samuel Julian Neufeld, Esq.
               Denis P. O'Leary, Esq., Of Counsel

**Devitt Spellman Barrett, LLP**
*Attorneys for the Defendants*
50 Route 111
Smithtown, NY 11787
    By:  David H. Arnsten, Esq.
        Joshua S. Shteireman, Esq, Of Counsel


**SPATT, District Judge.**

On February 6, 2014, the Plaintiff 545 Halsey Lane Properties, LLC (the "Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 against the Defendants Town of Southhampton; Town of Southhampton Planning Board (the "Planning Board"); Dennis Finnerty; John Blaney; George Skidmore; Larry Toler; John Zuccarelli; Jacqueline Lofaro; Philip A. Keith; Michele Berkoski, in her capacity as a Co-Executor of the Estate of William A. Berkoski, Jr.; Jennifer L. Caruso, in her capacity as a Co-Executor of the Estate of William A. Berkowski, Jr., Roman Roth; Thomas Conklin; Warren Topping a/k/a/ Jaegger Topping; Adam Halsey; Lee Foster; John L. Halsey; Lawrence Halsey; Henry Kraszewski; James Pike; Katherine Kazanas; Anthony Piazza; Arthur Ludlow; Kenneth Tillotson; Michael Wesnofske; Susan Falkowski Parry; and John and Jane Does Nos. 1-6 (collectively the "Defendants").  The Plaintiff challenges two decisions by the Planning Board involving conditional approvals of the Plaintiff's applications for a building permit for the construction of a barn and/or barns on its property.

The Plaintiff also commenced two related state court proceedings pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR") to challenge the decisions of the Planning Board as affected by errors of law, arbitrary and capricious decisions, abuses of discretion, and decisions not supported by a rational basis.

By Memorandum of Decision and Order dated August 19, 2014, this Court denied the Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction; failure to state a claim upon which relief can be granted, and, as to the individual defendants, on the basis of qualified immunity. 545 Halsey Lane Properties, LLC v. Town of Southampton, No. 14-CV-800 (ADS)(GRB), 2014 WL 4100952 (E.D.N.Y. Aug. 19, 2014). The Court's findings of law in that opinion are recounted at length later in this decision.

On November 6, 2014, the Defendants moved for an order (1) pursuant to Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) and In re World Trade Center Disaster Site Litigation, 503 F.3d 167, 169-70 (2d Cir. 2007) declaring that this Court is divested of jurisdiction to proceed with pre-trial proceedings and discovery pending the disposition of their appeal of the August 19, 2014 Order and (2) pursuant to Rule 8(a)(1)(A) of the Federal Rules of Appellate Procedure to stay the proceedings pending disposition of the Defendants' appeal.

On November 20, 2014, the Plaintiff moved for a declaratory judgment certifying the Defendants' appeal as "frivolous."

On December 11, 2014, the Court issued an order reserving decision on both the motion to stay discovery and pre-trial proceedings pending the disposition of the appeal of the August 19, 2014 Order and the motion to certify the appeal as "frivolous." The Court expressed its willingness to entertain a motion for partial reconsideration of that part of the August 19, 2014 order denying the motion to dismiss the complaint as against the Individual Defendants on the basis of qualified immunity, on the condition that the Defendants withdraw their notice of appeal without prejudice within 14 days of the date of that order.

The Defendants subsequently withdrew their notice of appeal to the Second Circuit.

On January 16, 2015, the Defendants, relying on this Court's December 11, 2014 order and a December 12, 2014 decision by Justice Daniel Martin of New York State Supreme Court, Suffolk County in the Article 78 proceedings, moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 60(b)(2), (5), and (6) for reconsideration of the August 19, 2014 order in its entirety and to dismiss the complaint.

For the reasons set forth in this opinion, the Defendants' motion is granted in part and denied in part.

## I.    BACKGROUND

Unless stated otherwise, the following facts are drawn from the complaint and construed in a light most favorable to the non-moving party, the Plaintiff.

A.  The Parties

The Plaintiff is a New York limited liability company.

The Defendant Town of Southampton (the "Town of Southampton") is a municipal corporation.

The Planning Board is a Board created by the Board of Southampton pursuant to New York Town Law § 271.

The Defendant Dennis Finnerty ("Finnerty"), sued in his individual capacity, is and/or was a member and Chairperson of the Planning Board at the relevant times herein.

The Defendant John Blaney ("Blaney"), sued in his individual capacity, is and/or was a member and Vice Chairperson of the Planning Board at the relevant times herein.

The Defendant George Skidmore ("Skidmore"), sued in his individual capacity, is and/or was a member of the Planning Board at the relevant times herein.

The Defendant Larry Toler ("Toler"), sued in his individual capacity, is and/or was a member of the Planning Board at the relevant times herein.

The Defendant John Zuccarelli ("Zuccarelli"), sued in his individual capacity, is and/or was a member of the Planning Board at the relevant times herein.

The Defendant Philip A. Keith ("Keith"), sued in his individual capacity, is and/or was a member of the Planning Board at the relevant times herein.

The Defendant Michele Berkoski, sued in her capacity as an Executor of the Estate of William A. Berkoski, Jr., having been issued Letters Testamentary by the Surrogate's Court of the County of Suffolk on or about May 12, 2011, is sued herein on account of the individual actions of William A. Berkoski, Jr. ("Berkoski"), who was a member of the Planning Board at the relevant times herein prior to his death on or about March 15, 2011.

The Defendant Jennifer L. Caruso, sued in her capacity as an Executor of the Estate of Berkoski, having been issued Letters Testamentary by the Surrogate's Court of the County of Suffolk on or about May 12, 2011, is sued herein on account of the individual actions of Berkoski.

The Defendant Roman Roth ("Roth"), sued in his individual capacity, is and/or was a member of the Town of Southampton's Agricultural Advisory Committee (the "AAC") at the relevant times herein.

The Defendant Thomas Conklin ("Conklin"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Warren Topping, also known as Jaegger Topping ("Topping"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Adam Halsey ("A. Halsey"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Lee Foster ("Foster"), sued in her individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant John L. Halsey ("J. Halsey"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Lawrence Halsey ("L. Halsey"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Henry Kraszewski ("Kraszewski"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant James Pike ("Pike"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Katherine Kazanas ("Kazanas"), sued in her individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Anthony Piazza ("Piazza"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Arthur Ludlow ("Ludlow"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Kenneth Tillotson ("Tillotson"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Michael Wesnofske ("Wesnofske"), sued in his individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendant Susan Falkowski Parry ("Parry"), sued in her individual capacity, is and/or was a member of the AAC at the relevant times herein.

The Defendants John and Jane Doe Nos. 1 through 6 are presently unknown individuals or entities who, according to the Plaintiff, may be liable to the Plaintiff.

B.  The Factual Allegations

By deed dated February 26, 2003, the Plaintiff purchased a 40.747 acre parcel of property located in the Town of Southampton, known as Suffolk County Tax Map No. 900–105.000–0001–001.030 (the "Property"). The purchase price remitted by or on behalf of the Plaintiff for the Property was $15,150,000.

The Property is identified on a subdivision map known as the Map of Broadlands, approved by the Planning Board on July 3, 1980, and filed in the Office of the Suffolk County Clerk on August 29, 1980, as Map No. 6930. All or part of the Property had been utilized as agricultural farmland since prior to the establishment of the Broadlands Subdivision.

In 1980, the prior owners of the Property, Raymond G. Wesnofske and Leonard Schulman (the "Grantors"), entered into an agreement with the Town pursuant to New York General Municipal Law § 247 that imposed certain understandings and agreements concerning the use of the Property.

The aforesaid agreement was memorialized in a Grant (the "Grant") which, following a public hearing, was authorized by the Town Board by Resolution dated August 16, 1980. The Grant, filed in the Office of the Suffolk County Clerk, expressly reserved to the Grantors and their "successors, heirs, legal representatives, and assigns" numerous property rights, including future uses of, and rights to make improvements on, the Property. The Plaintiff is a successor in title and interest to the Grantors.

Under the terms of the Grant, in consideration for the subdivision and aforementioned easement rights, the Grantors expressly retained and reserved for themselves and their successors the right to utilize the Property for "some or all" of the following uses:

1. farming operations and activities, including soil preparation, cultivation, fertilization, irrigation, pest control, water and drainage control, farm buildings, all other normal and customary farming operations and the use of farm vehicles and equipment in connection therewith;

2. open, fallow, landscaped and wooded areas, with lanes, walkways, foot paths, and ponds or brooks;

3. recreational areas, for compatible recreational uses;

4. one single-family dwelling and customary accessory uses and structures incidental thereto; and

5. to erect drainage structures and utility lines on the Property.

The Grant further provided that the Grantors and their successors were not restricted from constructing upon, maintaining, or utilizing the Property "to the extent specifically required or useful for or in aid of" the retained and reserved property uses.

The Property is located in the R–80 Residential Zoning District and is also within an Agricultural Overlay District ("AOD") established by the Town in 1972. However, at the time of the Grant, the Town Code (the "Town Code") did not restrict construction or development within the AOD. Subsequent to the execution of the Grant, the Town amended the Town Code to limit construction on certain land located within the AOD to which "development rights" had been transferred to the Town. On such land, only structures "incidental to agricultural production as the same is presently defined by § 301 of New York State Agricultural and Market Law" could be constructed. At no time was the Property the subject of a transfer of "development rights" as defined by the Town Code.

In 1994, the Town Code was amended to add § 330–51(A), which limited construction on land within the AOD that had been "preserved for agricultural purposes as a condition of subdivision or site plan approval by a grant of easement. . . ." The 1994 amendment to the Town Code prohibited all construction within the AOD except for structures permitted by the Town Board. The Town Board's permitting authority was limited to structures "customarily accessory and incidental to agricultural production as the same is or shall hereafter be defined in § 301 of the New York State Agricultural and Markets Law. . . ."

Permit applications to construct agricultural structures within the AOD were to be made to the Town Board and processed under the "same procedural requirements as set forth in Section 330–50D." In 1998, the Town Code was further amended to transfer this permitting authority from the Town Board to the Planning Board.

During 1996, a former owner of the Property sought to construct a single-family residence with certain accessory structures on the Property, and was directed to make an application to the Town Board. At the time of the application, the Town Board's permitting authority was limited by the Code to structures "incidental to agricultural production," and the Code prohibited the issuance of permits for structures "intended for human habitation." The application was considered by the Town Board, which also referred the matter to the Farmland Committee, a predecessor to the AAC, and the Planning Board for their respective reports and recommendations.

The Planning Board issued a report to the Town Board concluding that the use of the Property was not restricted to agricultural uses and that the Grant "sets forth the permitted uses, restrictions and conditions  that must be adhered to" on the Property and recommended that a construction permit for the residence be issued. Concurrently, the Farmland Committee issued a

report to the Town Board concluding that, pursuant to the Grant, the uses permitted on the Property expressly included, among other things, "agricultural, open space [and] recreational" uses and the erection of one single-family residence with accessory structures.

By Resolution dated December 23, 1997, the Town Board issued a permit for the construction of a single-family residence and accessory structures on the Property. The Plaintiff's predecessor-in-title to the Property subsequently constructed a residence and certain other structures on the Property.

After purchasing the Property in 2003, the Plaintiff placed on the Property a small unadorned baseball diamond, a children's recreational playground, and art sculptures. In March 2006, the Plaintiff sought to construct a barn on the Property. At the time of the application, the Plaintiff was utilizing a three acre portion of the Property for an orchard and intended to increase the size of the orchard and to add a vineyard, to a total minimum agricultural use of at least ten acres. The Plaintiff was directed to file an application for a permit with the Planning Board for site plan review. At the direction of the Planning Board, the Plaintiff prepared a proposed site plan for an 11,250 square foot barn and attended a "work session." Thereafter, in response to comments and requests from the Planning Board, the Plaintiff provided two additional modifications to its proposed barn.

The Planning Board referred the application to the AAC. The AAC responded to the Planning Board and commented that the proposed size of the barn was "disproportionately large for the proposed agricultural endeavor" and that "the ball field and playground equipment are not an agricultural use and removal of them should be a condition of any future approvals." The AAC's comments to the Planning Board made no reference to the Grant and/or its retained and reserved uses.

The Plaintiff addressed the AAC's comments, noting, among other matters, that (1) the ball field and playground equipment were recreational uses permitted by the Grant; (2) the Plaintiff intended to increase the size of the agricultural use of the Property consistent with the Grant; and (3) the proposed structure size was consistent with other permits issued for barn constructions in the Town.

The AAC's communications to the Planning Board also questioned what equipment would be stored inside the barn and asserted that the equipment identified by the Plaintiff was "essentially landscaping equipment," which the AAC maintained could not be stored on the Property. The Plaintiff subsequently relocated the proposed barn further north on the Property. The AAC then commented that the new location would impact the "view shed" of other preserved farmland. However, no "view shed" agreement existed with regard to the Property, a fact acknowledged by the Planning Board.

The Plaintiff addressed the AAC's concerns regarding the size of the proposed barn by reviewing public records and preparing two studies, both of which confirmed that the density of the Plaintiff's proposed barn was significantly less than other barns on parcels within the AOD. One parcel identified in the studies was located across the street from the Property at 445 Halsey Lane, on which the Planning Board had approved 19,305 square feet of agricultural structures — more than 70% larger than that sought by the Plaintiff — situated on an agricultural reserve parcel of only 13.3 acres, less than one-third of the size of the Property.

After receipt of the Plaintiff's studies, the AAC provided a different explanation as to why the Plaintiff would not be permitted to construct a barn, claiming that the Property was not "in agricultural production" as defined in § 301 of the New York Agricultural and Markets Law.

At the same time that the AAC concluded that the barn could not be built, it also

recommended that the Plaintiff reduce the size of the barn to 2400 square feet on the 40.747 acre parcel.

In an attempt to minimize and mitigate its expenses and damages, the Plaintiff submitted another revised site plan, which reduced the size of the barn by approximately 30%; increased the size of the orchard to 10 acres; relocated the barn to the southwest corner of the Property as recommended by the AAC; and eliminated the proposed vineyard as recommended by the Town's Planning Division. Following another public hearing, the Plaintiff again modified its plan to accommodate the Planning Board's direction that the Plaintiff rotate the proposed barn so that the narrow end would face an adjacent landowner.

After further suggestions by the Planning Board, the Plaintiff submitted a seventh revised application, reducing the size of the barn from 11,250 square feet to 7,200 square feet and relocating it to a location on the Property recommended by the Town's Planning Division. By Resolution dated February 10, 2011, the Planning Board rejected the Plaintiff's application. Instead, the Planning Board approved its own version of an application that had never been made, for a barn of not more than 2,400 square feet on the 40.747 acre Property. The Planning Board imposed conditions that, among other things, required the Plaintiff to (1) remove the children's recreational playground equipment on the Property; (2) remove the ball field on the Property; (3) agree not to store landscaping or lawn equipment anywhere on the Property; and (4) provide the Town with different and broader inspection rights on the Property than those previously agreed to in the Grant. The Planning Board indicated that it reduced the barn size because it "must" rely on the AAC's recommendation. The Planning Board also asserted that the existing orchard did not meet the threshold of commercial agricultural production or the

definition of land use in agricultural production contained in the Agriculture and Market Law § 301.

C. Procedural History

On February 6, 2014, the Plaintiff commenced the instant action pursuant to 42 U.S.C. § 1983. The Plaintiff alleged (1) a violation of its Fourteenth Amendment right to Substantive Due Process; (2) a violation of its Fourteenth Amendment right to Equal Protection under the law; and (3) a violation of the Fifth Amendment's takings clause. The Plaintiff has since withdrawn its takings clause claim.

On March 26, 2014, the Defendants moved pursuant to Fed R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

On April 28, 2014, a separate action commenced by the Plaintiff, Docket No. 14–cv–2368, was reassigned to this Court as related to the instant action. The reassigned action is premised upon the denial of the Plaintiff's appeal to the Town of Southampton Zoning Board of Appeals from a decision of the Town Building Inspector denying the Plaintiff's request for a building permit to allow it to build a regulation-sized basketball court on the Property.

On May 30, 2014, the Defendants in Docket No. 14–cv–2368 moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted.

On June 13, 2014, the Plaintiff moved pursuant to Fed. R. Civ. P. 42 to consolidate the two actions.

As noted above, on August 19, 2014, the Court denied the Defendants' motion to dismiss

the complaint for lack of subject matter jurisdiction; failure to state a claim upon which relief can

be granted, and as to the individual defendants, on the basis of qualified immunity.

With regard to ripeness, the Court found as follows:

Here, the Defendants contend that the Plaintiff's Equal Protection "class-of-one"
claim is not ripe for adjudication in light of the fact that the Plaintiff has instituted
Article 78 proceedings seeking to remediate the perceived impropriety of the
Planning Board's conditional approvals. The Court disagrees.

The Plaintiff has established that the Resolutions issued by the Planning Board,
which are not appealable to the Town's Zoning Board of Appeals, constitute
"final, definitive position[s] as to how it could use [its] property," see Murphy,
402 F.3d at 348 (citing Williamson, 473 U.S. at 186, 105 S. Ct. 3108), sufficient
to establish the ripeness of its Equal Protection claim. See Roman Catholic
Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury, No. 09–CV–
5195(DRH)(ETB), 2012 WL 1392365, at *12 (E.D.N.Y. Apr. 23, 2012).
Contrary to the Defendants' contention, the Plaintiff is not required to bring an
Article 78 proceeding in order for the instant action to be deemed ripe:

The [aggrieved party]'s failure to commence an Article 78
proceeding to request review of the Resolution does not render its
claims unripe for judicial review given that the administrative
process, *per se*, had run its course.

Id. at *7.

Further, the Defendants' reliance on Lewis v. Carrano, 844 F. Supp. 2d 325
(E.D.N.Y.2012) is misplaced. There, the aggrieved party commenced a 42 U.S.C.
§ 1983 action, alleging that a town had improperly refused to either approve or
reject a permit application. Here, by contrast, the Planning Board adopted two
final Resolutions, which effectively denied the Plaintiff's applications and
conditionally approved a different version of those applications.

As the Plaintiff was not required to commence an Article 78 proceeding in order
for the instant action to be deemed ripe, the fact that it elected to do so does not
render its otherwise ripe claims to be unripe. Accordingly, the Court declines to
dismiss the Plaintiff's Equal Protection Claim on the basis of ripeness.

545 Halsey Lane Properties, LLC v. Town of Southampton, 39 F. Supp. 326, 338

(E.D.N.Y. 2014).

With regard to qualified immunity, the Court found as follows:

> In this case, the Individual Defendants seek qualified immunity because they purportedly undertook discretionary actions. However, as previously stated, the Plaintiff has adequately alleged that, in fact, the Defendants lacked discretion to require site plan approval for the Plaintiff's proposed barn.
>
> As the Second Circuit held in <u>Brady</u>, "[i]t is well settled that enforcement of an otherwise valid zoning ordinance violates the Constitution . . . if . . . the decision of the particular zoning body is arbitrary, . . . or if the ordinance is applied or enforced with a discriminatory intent or purpose." 863 F.2d at 217 (quotation marks and citation omitted). Therefore, the Court concludes that the Individual Defendants are not entitled to the defense of qualified immunity in the event that they are found to have violated the Plaintiff's Fourteenth Amendment Rights.

<u>Id.</u> at 347. The Defendants did not move for reconsideration of the August 19, 2014 Order.

On September 16, 2014, in 14-cv-2368, the Court (1) dismissed the Plaintiff's substantive due process claim and (2) dismissed the Plaintiff's breach of contract claim, declining to exercise supplemental jurisdiction over it. That day, judgment was entered. On October 14, 2014, the Plaintiff appealed the judgment to the United States Court of Appeals for the Second Circuit. That appeal is pending.

In this case, on September 18, 2014, the Defendants appealed the August 19, 2014 order to the Second Circuit.

On November 6, 2014, the Defendants moved for an order (1) pursuant to <u>Mitchell</u> and <u>In re World Trade Center Disaster Site Litigation</u> declaring that this Court is divested of jurisdiction to proceed with pre-trial proceedings and discovery pending the disposition of their appeal of the August 19, 2014 Order and (2) pursuant to Rule 8(a)(1)(A) of the Federal Rules of Appellate Procedure to stay the proceedings pending the disposition of the Defendants' appeal.

On November 20, 2014, the Plaintiff moved for a declaratory judgment certifying the Defendants' appeal as "frivolous."

As noted above, on December 11, 2014, the Court issued an order reserving decision on both the motion to stay discovery and pre-trial proceedings pending the disposition of the appeal of the August 19, 2014 Order and the motion to certify the appeal as "frivolous." The Court expressed its willingness to entertain a motion for partial reconsideration of that part of the August 19, 2014 order denying the motion to dismiss the complaint as against the individual defendants on the basis of qualified immunity, on the condition that the Defendants withdraw their notice of appeal without prejudice within 14 days of the date of this order.

The Court reasoned:

The Second Circuit has yet to delineate the precise circumstances under which an interlocutory appeal from a denial of qualified immunity should be considered "frivolous." However, at least one district court in this Circuit has found such an appeal to be "frivolous" when the issue of qualified immunity turned not on an issue of law, but rather on an issue of fact, and, therefore, appellate jurisdiction over that question was lacking. Bean v. City of Buffalo, 822 F. Supp. 1016, 1019 (W.D.N.Y. 1993)("the Second Circuit has explained that it has no appellate jurisdiction to review denials of summary judgment on the issue of qualified immunity where entitlement to the defense depends upon questions of fact, or questions of both law and fact . . . . Because defendants' entitlement to the defense of qualified immunity so clearly depends upon the resolution of material issues of fact, and because the municipal defendants have no cognizable basis for an appeal, this Court holds that the notices of appeal are frivolous, and that they do not invoke appellate jurisdiction.")(internal citations omitted).

At this point, the Court briefly reviews the relevant law of qualified immunity, and the arguments the Defendants made in support of that immunity at the motion to dismiss stage.

Qualified immunity shields government officials from suit and civil liability for "the performance of their discretionary functions only where their conduct 'did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official[s] to believe that [their] conduct did not violate plaintiff's rights.'" Williams v. Cnty. of Nassau, 684 F. Supp. 2d 268, 289 (E.D.N.Y. 2010)(quoting Mandell v. County of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003)), on reconsideration in part, 779 F. Supp. 2d 276 (E.D.N.Y. 2011) aff'd, 581 F. App'x 56 (2d Cir. 2014)). Indeed, "qualified immunity only applies where a government official performs a discretionary, as distinct from a ministerial function." Toussie v. Cnty. of Suffolk, 806 F. Supp. 2d 558, 588

(E.D.N.Y. 2011)(citing Walz v. Town of Smithtown, 46 F.3d 162, 169 (2d Cir. 1993).

In this case, seeking dismissal of the complaint as against the individual defendants on the basis of qualified immunity, the Defendants relied on the basis that the individual defendants were performing a "discretionary function." (Doc No. 16, at 25-26). The Court pauses to note that, even if this were true, it would not be enough to establish qualified immunity as a matter of law because the relevant defendant's conduct must also not have violated the Plaintiff's "clearly established rights" or it must have been objectively reasonable for the defendant to believe that he or she was not violating the Plaintiff's "clearly established rights."

Regardless, the Plaintiff countered that the individual defendants lacked discretion to render any of the substantive decisions they did, let alone subject the Plaintiff's proposed changes to site plan review at all. In other words, the Plaintiff essentially argued that the individual defendants' actions at issue constituted a failure to perform a "ministerial function."

In the August 19, 2014 Order, the Court declined to recognize qualified immunity as a matter of law for the individual defendants, reasoning that "the Plaintiff ha[d] adequately alleged that, in fact, the Defendants lacked discretion to require site plan approval for the Plaintiff's proposed barn." (Doc No. 34, at 32.). The Court further concluded that the individual defendants were not entitled to qualified immunity "in the event that they are found to have violated the Plaintiff's Fourteenth Amendment Rights." (Id.).

The Defendants frame the issue on appeal with regard to qualified immunity "as whether individual members of the Planning Board, exercising site plan review of plaintiff's application, filed by the plaintiff for such review, violated clearly established law, or if it was objectively reasonable for the Board members to believe that their actions did not violate such law." (Doc No. 47, at 2.) According to the Defendants, "there are no questions of fact that need to be resolved in order to determine whether the Planning Board's exercise of jurisdiction in accord with the Town Code was such a 'clear violation'" (id.) and, therefore, their appeal cannot be deemed "frivolous."

Upon closer review, it is clear that the issue of "discretionary function" versus "ministerial function" and the related issues surrounding qualified immunity may be decided as a matter of law and based on the undisputed facts. Indeed, whether the individual defendants engaged in a "discretionary" versus "ministerial" function" and relatedly, whether the individual defendants violated the Plaintiff's "clearly established rights" requires a straightforward interpretation of the Grant and Town Code §§ 330-182(A)(2) , 330-51(A), 330-50(D)(2). Further, assuming the individual defendants lacked discretion to require the Plaintiff to submit to site plan review or to render any of the substantive decisions they did, the related

question whether it was objectively reasonable for them to believe that their conduct did not violate the Plaintiff's "clearly established rights" – a question the parties have yet to directly address in detail – may be decided as a matter of law.

Notably, in its motion papers, the Plaintiff is hard pressed to identify any underlying factual dispute as related to the question of qualified immunity

To be sure, certain factual considerations may be relevant to the ultimate legal questions surrounding qualified immunity. For example, the Plaintiff contends that the history of the property, including the Town Board's issuance of a permit to erect a dwelling on the property, may "inform[]" (Doc No. 45, at 8.) this Court's ultimate resolution of the question of qualified immunity. However, the fact that the Town Board issued this permit is undisputed by the Defendants. (Answer, at ¶¶ 30, 47).

In a similar vein, contrary to the Plaintiff's contention, whether some grants entered into by the Town with other property owners specifically conditioned their reserved rights on site plan approval and/or certain provisions of the Town Code does not involve an issue of fact. The Court may take judicial notice of these other grants as public records. See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004)(courts can "look to public records . . . in deciding a motion to dismiss"); Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester, No. 11-CV-5608 (CS), 2013 WL 135216, at *4 (S.D.N.Y. Jan. 10, 2013)("it is well established that courts may take [judicial] notice of publicly available documents on a motion to dismiss.").

Properly viewed, the question of whether the individual defendants are entitled to qualified immunity may be decided as a matter of law and the undisputed facts. For this reason, the Court erred, at the motion to dismiss stage, in declining to decide the issue of qualified immunity.

That said, at this time, the Court is not prepared to render a ruling on this issue. Rather, the Court would entertain a motion for partial reconsideration of that part of the August 19, 2014 Order denying the Defendants' motion to dismiss the complaint as against the individual defendants on the basis of qualified immunity, on the condition that the Defendants withdraw their notice of appeal without prejudice within 14 days of the date of this order.

(Doc No. 49, at 4-8.)

One day later, on December 12, 2014, in a comprehensive sixteen page singles-spaced decision, Justice Daniel Martin of New York State Supreme Court, Suffolk County remitted the Article 78 matters to the Planning Board for reconsideration of certain questions of fact.

Addressing the jurisdiction of the Town's Agricultural Advisory Committee (AAC),

Justice Martin found:

> The Court finds that the Planning Board properly considered the application for a proposed 10- acre orchard, and that, in taking into consideration the reservation of rights for other uses contained in the grant of easement, it was not required to take into account the undefined and speculative future development of the premises for agricultural purposes. In addition, as set forth below, it is determined that the AAC had the authority to consider the size of the proposed barn under the circumstances. Finally, a review of Town of Southampton Code § 330-182 indicates that the Planning Board properly considered the relevant criteria set forth therein.

> . . . [T]he record reveals that the [P]etitioner acknowledged its obligation to appear before the committee regarding its application in the public hearings before the Planning Board. In addition, the [P]etitioner never raised the issue of the AAC's allegedly limited jurisdiction at any time during the application process or requested a ruling on that issue from an appropriate municipal authority.

(Doc No. 53, Exh D., at 6-7.)

Justice Martin also addressed the contention of the Plaintiff, there labeled the Petitioner, that its analysis of the ratio of barn size to farm acreage within the Town of Southampton indicates that the Planning Board's decision to limit its barn to 2,400 square feet was arbitrary and capricious; that the AAC could not consider the size of a farm building in making its recommendations to the Planning Board; that the Planning Board's decision must be based on the proposed future agricultural use of all 40 acres of the premises; and that the Planning Board's decision was not based on the criteria set forth in the Town of Southampton Code § 330-182.

Justice Martin found as follows:

> [T]he Court notes that the petitioner's analysis of the size of barns within the Town does not establish that the Planning Board's decision should be overturned. A reasoned analysis or the appropriate size of a structure must take into account the specific uses of the building, and the Petitioner's analysis does not take into account the varying agricultural uses permitted within the Town, or the uses of the buildings that it analyzed. The Planning Board was entitled to credit the findings of the experts that a barn of 2,400 square feet would adequately

19

serve the proposed 10-acre orchard while meeting the competing interests of the community and the Town (see Gladstolle v Zoning Bd. of Appeals of Inc. Village of Southampton, 13 AD3d 445, 785 NYS2d 697 [2d Dept 2004]), as well as the interests of the Town relative to the grant of easement.

(Id. at 6.)

With regard to the contention that Town Code exempts agricultural buildings from

mandatory site plan review, Justice Martin found as follows:

It is undisputed that the Town of Southampton (Town) acquired the right to preserve all of the premises for agricultural purposes by the grant of easement herein, subject only to the petitioner's reservation of rights to the other permitted uses therein. To what extent the petitioner can unilaterally dictate the percentage of non-agricultural use is not before the Court. However, once the petitioner has expressly set aside a portion of the premises for agricultural use, it cannot claim that the other permitted uses can defeat the Town's right to preserve that portion of the premises so dedicated by the use of the Town Code and the normal procedures of its agencies and offices. It is determined that the Planning Board has, and had, the authority to require the petitioner to submit to site plan review of the proposed construction(s).

(Id. at 10.)

Turning to the argument that the Town Code is preempted by General Municipal Law §

247 (4), which this Court declined to address in its August 19, 2014 order, Justice Martin found

as follows:

A review of [GML 247(4)] statute establishes the lack of merit of the petitioner's claim that the Town Code is preempted by the GML, and that its rights under the grant of easement cannot be defeated by the Town's zoning laws. A plain reading of GML 247(4) indicates that is serves to protect the rights of a municipality, or other party, that acquires rights pursuant to the relevant transaction. Here, it is undisputed that the grantors did not acquire any rights under the grant of easement. Rather, the grantors reserved to themselves certain rights and uses of the premises that the petitioner succeeded to upon its purchase of the property. In addition, the statute does not expressly indicate that a zoning law cannot defeat an acquired right, or that such a right cannot be defeated under certain conditions. Moreover, the cases cited by the petitioner in support of its contentions are inapposite as they involve a party's change in position in reliance upon, or substantial performance under, a previously approved plat plan.

(Id. at 11.)

Justice Martin also rejected the argument that the Planning Board exceeded its authority by considering the size of the agricultural building; violated the grant of easement by applying a "necessity standard"; and that its decisions resulted from *ad hoc* zoning and ignored state policy that encourages the use of agricultural land. In particular, Justice Martin found:

It is well settled that site plan review includes a review of the "size" of the proposed structure. Town Law 274-a(a)(2) provides that site plan elements include the "location and dimensions of buildings." In addition, the procedure set forth in the Town Code for reviewing agricultural buildings on land preserved for that purpose pursuant to GML 274 includes an assessment of the "scale and density" of the development (Town Code 330-182[D]), and the scale of the building's façade (Town Code 330-182[I]). As noted above, the petitioner's contention that its analysis of the ratio of barn size to farm acreage establishes that the Planning Board's decision to limit its barn to 2,400 square feet is arbitrary and capricious is without merit, as is its contention that size is not a criteria in this matter.

Under the circumstances, the petitioner's remaining contentions are also without merit. Here, a balance must be struck between the right of the petitioner to some non-agricultural use of the premises and the Town's interests in preserving agricultural lands and encouraging its use. Considering that the petitioner's application expressly limits the size of the agricultural use of the premises, and considering the nature of the proposed agricultural use, the current use of the open space, and the competing nature of the permitted uses under the grant of easement, it is determined that the Planning Board's review of the size of the barn(s) does not amount to a necessity standard, nor is it "ad hoc" zoning.

Here, the AAC carefully reviewed the petitioner's proposed construction, its planned agricultural use of the premises, and the equipment that the petitioner indicated it needed to store in the south barn. In a report to the Planning Board, the AAC noted that the majority of said equipment was related to the maintenance of a vineyard, which had been proposed and then removed in amended site plans filed by the petitioner. Much of the remaining equipment listed was not needed for agricultural use; rather, it was equipment for maintaining the grass lawn at the premises.

It is determined that the Planning Board's reliance on the AAC's expertise, and its acceptance of the AAC report, was not arbitrary and capricious. In addition, said report serves to encourage further agricultural uses of the premises as it presently limits the petitioner's ability to use agricultural lands for the maintenance of any other permitted, or allegedly permitted, uses of the premises under the grant of

easement including, but not limited to, maintenance of the grass law and baseball field.

(Id. at 11-12.)

Justice Martin also rejected the Plaintiff's argument that *collateral estoppel* bars the Planning Board from relying on Agriculture and Markets Law 301 to deny its application because the Defendants allegedly took a contrary position in a separate litigation, Mantello v. Finnerty, No. 05–20339 (Sup.Ct. Suffolk Cty.).

In Mantello, the Planning Board defended a permit it had issued to another property owner by asserting that the Town Code does not prohibit the construction of agricultural structures on AOD properties of less than seven acres in size and that pre-existing agricultural use is not required in order to obtain approval for an agricultural structure.

On this issue, Justice Martin found:

While it may be true that the Planning Board would have been on more solid ground to omit any such reference to the AML, it is determined that the issue is academic. Here, it is undisputed that the Planning Board granted an approval to the petitioner despite the fact that the orchard covered only 1.5 acres of the premises, and before any sales of the subject crops were completed. It is noted that the petitioner conveniently omits the Planning Board's full statement that it's finding as to the size of the barn(s) is also based on the phrase "commercial agricultural operation," and that said phrase is at least comparable to the phrase "production for commercial purpose" used in the grant of easement to define what agricultural uses are permitted. As set forth herein, it is determined that the Planning Board's use of the latter phrase in deciding the appropriate size of the barn or barns to be constructed was not arbitrary and capricious, and that the petitioner's claim that collateral estoppel bars the application of the AML to this matter is academic.

(Id. at 11.)

Justice Martin also rejected as without merit the Plaintiff's argument that the Planning Board violated *stare decisis* principles by failing to treat applicants equally:

As indicated previously, the petitioner's analysis fails to take into account all of the variables that the Planning Board's is obligated to consider in determining the size of an agricultural barn under the Town Code. While it is true that administrative *stare decisis* requires that an agency treat applicants equally, there is no indication that the Planning Board failed to do so in this instance, or that there was a departure from its precedent mandating an explanation of the differential treatment of the applicant. This is especially true here, where the petitioner continues to emphasize the unique nature of the subject grant of easement, and the somewhat unique reservations of permitted uses of the premises thereunder.

(Id.)(italics added).

However, Justice Martin found that the Planning Board failed to consider certain items under the permitted use of the Agricultural Reserve Area ("ARA") as open, fallow, landscaped, and wooded areas. However, Justice Martin found that the Planning Board's ultimate determinations on these items to be rational, legal, and not arbitrary and capricious on the record as related to the agricultural use of the premises. (Id. at 16.) Justice Martin remitted one of the Article 78 matters to the Planning Board for "reconsideration of the questions of fact generally noted herein, and, depending on the findings of fact by the Board, following a further hearing if necessary, whether the enumerated conditions, if any, are appropriate." (Id.).

Here, in addition to arguing that the Individual Defendants are entitled to qualified immunity, the Defendants contend that Justice Martin's December 12, 2014 decision represents an intervening change of controlling law that warrants reconsideration of the Court's entire August 19, 2014 order denying the motion to dismiss. In particular, the Defendants assert that the part of Justice Martin's December 12, 2014 decision remitting one of the Article 78 matters to the Planning Board renders the federal litigation unripe. Alternatively, the Defendants argue that Justice Martin's December 12, 2014 decision definitively resolved the Plaintiff's substantive due process and equal protection rights claims and the issue of the Planning Board's jurisdiction, which serves as the basis for the qualified immunity defense.

## II.     DISCUSSION

A.  Ripeness

Article III, Section 2 of the U.S. Constitution restricts federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2; see Vt. Right to Life Comm., Inc. v. Sorrell, 221 F.3d 376, 381 (2d Cir. 2000).  The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808, 123 S. Ct. 2026, 2030, 155 L. Ed. 2d 1017 (2003)(internal quotation marks and citation omitted).  Its purpose is to "ensure that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III" and "prevent[ ] a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 90 (2d Cir. 2002).

In determining whether a claim that challenges a law is ripe for review, the Court must consider whether the issue is fit for adjudication as well as the hardship to the plaintiff that would result from withholding review. Abbott Labs. v. Gardner, 387 U.S. 136, 149, 87 S Ct. 1507, 18 L. Ed. 2d 681 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977); Marchi v. Bd. of Coop. Educ. Servs. of Albany, 173 F.3d 469, 478 (2d Cir. 1999).

The Supreme Court has established a two-pronged test to determine whether a claim is ripe for takings-type claims. Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186, 105 S. Ct. 3108, 87 L.Ed.2d 126 (1985).  The first prong requires that the government entity charged with implementing the regulations in question has

reached a "final decision." Id. at 186, 105 S. Ct. at 3116; see Honess 52 Corp. v. Town of

Fishkill, 1 F. Supp. 2d 294, 300–01 (S.D.N.Y. 1998)(finding that the court "cannot determine

whether a plaintiff has been deprived of property, arbitrarily or otherwise, until it has a final

decision before it").  The second prong requires the plaintiff to have sought compensation

through "reasonable, certain and adequate" state provisions for obtaining compensation.

Williamson Cnty., 473 U.S. at 194, 105 S. Ct. at 3120 (citation and internal quotation marks

omitted).

     Although the ripeness test in Williamson County involved a takings claim, the ripeness

requirement of that case has also been extended by the Second Circuit to Equal Protection and

Due Process claims asserted in the context of land use challenges.  See Dougherty, 282 F.3d at

88–89 ("The ripeness requirement of Williamson, although announced in a takings context, has

been extended to equal protection and due process claims asserted in the context of land use

challenges."); Southview Assocs. Ltd. v. Bongartz, 980 F.2d 84, 96–97 (2d Cir. 1992)(applying

ripeness test to Substantive Due Process claims); Country View Estates @ Ridge LLC v. Town

of Brookhaven, 452 F. Supp. 2d 142, 148–50 (E.D.N.Y. 2006)(applying ripeness test to Equal

Protection and Due Process claims).

     In Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 348–49 (2d Cir. 2005), the

Second Circuit explained the considerations underlying prong-one ripeness — namely, the "final

decision" requirement:

> Four considerations, all of which motivate our decision today, undergird prong-
> one ripeness.  First . . . the Williamson County Court reasoned that requiring a
> claimant to obtain a final decision from a local land use authority aids in the
> development of a full record.  Second, and relatedly, only if a property owner has
> exhausted the variance process will a court know precisely how a regulation will
> be applied to a particular parcel.  Third, a variance might provide the relief the
> property owner seeks without requiring judicial entanglement in constitutional
> disputes.  Thus, requiring a meaningful variance application as a prerequisite to

federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible. Finally, since <u>Williamson County</u>, courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.

402 F.3d at 348–49 (citations omitted). As the Second Circuit has noted, "[t]he <u>Williamson County</u> ripeness test is a fact-sensitive inquiry that may, when circumstances warrant, be applicable to various types of land use challenges." <u>Id.</u> at 350.

Here, as noted above, in rejecting the Defendants' ripeness argument, the Court found that the Resolutions issued by the Planning Board, which are not appealable to the Town's Zoning Board of Appeals, constituted "final, definitive position[s] as to how it could use [its] property," sufficient to establish the ripeness of its Equal Protection claim. 39 F. Supp. at 338 (internal citations omitted). Further, the Court found that "[c]ontrary to the Defendants' contention, the Plaintiff [was] not required to bring an Article 78 proceeding in order for the instant action to be deemed ripe" and, therefore, "[t]he fact that it elected to do so does not render its otherwise ripe claims to be unripe." <u>Id.</u>

Having held that the Article 78 proceedings do not render the present action ripe, it follows that the specter of additional Article 78 proceedings does not render an otherwise ripe claim unripe. The Defendants cite no authority to the contrary, nor any authority to justify disturbing the Court's prior ruling on ripeness. Accordingly, the Court rejects the Defendants' ripeness-based argument. The Court need not address the Plaintiff's arguments that additional administrative proceedings would be futile.

B. <u>Res Judicata and Collateral Estoppel</u>

Alternatively, the Defendants contend that this Court should nevertheless dismiss the

Plaintiff's substantive due process and equal protection claims in light of Justice Martin's findings.

Tellingly, however, the Defendants do not specifically rely on the doctrines of *res judicata* or *collateral estoppel*.

Traditionally, the doctrine of *res judicata* requires that "a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand." Epperson v. Entertainment Express, Inc., 242 F.3d 100, 108 (2d Cir. 2001)(internal quotation omitted). In measuring the applicability of the doctrine, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist., 465 U.S. 75, 76, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984). However, *res judicata* is, as the Plaintiff notes, inapplicable where the initial forum was not empowered to grant the full measure of relief available in the subsequent lawsuit. See Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994); Coastal Commc'ns Serv., Inc. v. City of New York, 658 F. Supp. 2d 425, 438 (E.D.N.Y. 2009)(same).

Indeed, "[i]t is well settled that *res judicata* does not apply to bar a § 1983 action where a plaintiff has previously brought an Article 78 proceeding." Hachamovitch v. DeBuono, 159 F.3d 687, 695 (2d Cir. 1998)(italics added). "The reason is that damages are not available in these circumstances in an Article 78 proceeding and therefore that action cannot give the damages relief demanded in a civil rights suits such as this one." Leo v. New York City Dep't of Educ., No. 13 CV 2271 (RJD)(JMA), 2014 WL 6460704, at *4 (E.D.N.Y. Nov. 17, 2014)(quoting Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987)).

In New York, the doctrine of *collateral estoppel*, or issue preclusion, "bars a party from relitigating in a subsequent proceeding an issue clearly raised in a prior proceeding and decided against that party where the party to be precluded had a full and fair opportunity to contest the prior determination." Weiss v. Manfredi, 83 N.Y.2d 974, 976, 616 N.Y.S.2d 325, 639 N.E.2d 1122 (1994). There are two requirements for the invocation of the doctrine of *collateral estoppel*: (1) "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action" and (2) "there must have been a full and fair opportunity to contest the decision now said to be controlling." Bland v. New York, 263 F. Supp. 2d 526, 551 (E.D.N.Y. 2003)(quoting Schwartz v. Public Administrator of Bronx. Co., 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969)).

Further, "[u]nder New York law, appellate review generally plays a central role in safeguarding the correctness of judgments." Bland, 263 F. Supp. at 552 (quoting Malloy v. Trombley, 50 N.Y.2d 46, 51, 427 N.Y.S.2d 969, 405 N.E.2d 213 (1980). "Collateral estoppel cannot be applied without first considering the availability of such review. If a party has not had an opportunity to appeal an adverse finding, then it has not had a full and fair opportunity to litigate that issue." Bland, 263 F. Supp. 2d at 552.

Here, the Plaintiff represents that judgment has not been entered in the State Court proceedings, a prerequisite to an appeal as of right. Although interlocutory review may be available, it does not follow that the Plaintiff is obligated to help the Defendants by seeking such review in order to cement the preclusive effect of Justice Martin's findings. Of course, this is not to say that Justice Martin's findings in the Article 78 setting may not provide persuasive authority for resolution of the Plaintiff's federal claims.

The Court also notes that the Plaintiff, without legal justification, claims that the doctrine of *collateral estoppel* should be applied to Justice Martin's finding that the Planning Board failed to consider certain items under the permitted use of the ARA as open, fallow, landscaped, and wooded areas. This finding happens to have been rendered in favor of the Plaintiff. However, the Plaintiff cannot pick and choose, at least without some legal basis, which parts of a judicial decision should receive *collateral estoppel* effect.

The Court also notes that the Plaintiff's selective reliance on certain aspects of Justice Martin's decision is all the more unhelpful considering that the Plaintiff mischaracterizes that decision as holding that the Planning Board "acted arbitrarily and capriciously and without regard for or consideration of the non-agricultural uses permitted to [the] Plaintiff under the Grant." (Pl's Brf in Opp, at 4.) To the contrary, as noted above, Justice Martin specifically found that while the Planning Board should have considered certain items under the permitted use of the ARA, its ultimate determinations on these items were rational, legal, and not arbitrary and capricious on the record as related to the agricultural use of the premises.

In any event, as noted above, at this time, the Court rejects the Defendants' request to accord *res judicata* and *collateral estoppel* effect to Justice Martin's decision.

C. Qualified Immunity

Qualified immunity shields government officials from suit and civil liability for "the performance of their discretionary functions only where their conduct 'did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official[s] to believe that [their] conduct did not violate plaintiff's rights.'" Williams v. Cnty. Of Nassau, 684 F. Supp. 2d 268, 289 (E.D.N.Y. 2010)(quoting Mandell v. County of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003)), on reconsideration in part, 779 F. Supp. 2d 276 (E.D.N.Y. 2011) aff'd, 581 F.

App'x 56 (2d Cir. 2014)).  Indeed, "qualified immunity only applies where a government official performs a discretionary, as distinct from a ministerial function." Toussie v. Cnty. Of Suffolk, 806 F. Supp. 2d 558, 588 (E.D.N.Y. 2011)(citing Walz v. Town of Smithtown, 46 F.3d 162, 169 (2d Cir. 1993).

A defendant asserting a qualified immunity defense on a motion to dismiss "faces a formidable hurdle . . . and is usually not successful." Field Day, LLC v. County of Suffolk, 463 F.3d 167, 191–92 (2d Cir. 2006).  In this regard, the defense will succeed only where entitlement to qualified immunity can be established "based [solely] on facts appearing on the face of the complaint." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).  For this reason, a motion to dismiss "is a mismatch for immunity and almost always a bad ground of dismissal." Id. (quoting Jacobs v. City of Chicago, 215 F.3d 758, 775 (7th Cir. 2000)(Easterbrook, J., concurring in part)).

That said, qualified immunity is an "immunity from suit rather than a mere defense to liability," Mitchell, 472 U.S. at 512.  Therefore, where possible, courts strive to resolve the immunity question at the "earliest possible stage in litigation." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

With regard to the Plaintiff's contention that the Planning Board violated its constitutional rights by unlawfully subjecting him to site plan review without jurisdiction, the Defendants ask this Court to "defer" to Justice Martin's finding that the Planning Board did, in fact, have such jurisdiction.

While not according Justice Martin's finding *collateral estoppel* effect, the Court does find it to be persuasive authority, particularly on an issue such as the jurisdiction of a local Planning Board.

Relevant here, §330-51(A) of the Southampton Town Code provides:

Acquisition of development rights or easements via subdivision or site plan procedure.

No structures *of any kind whatsoever* shall be permitted to be erected or maintained on lands which have been preserved for agricultural purposes as a condition of subdivision or site plan approval by grant of easement, covenant, deed of development rights, lease or other property interest granted to the Town, except those structures that may be permitted by the Farmland Permit Administrator, Agricultural Advisory Committee and/or Planning Board pursuant to the same procedural requirements as set forth in §330-50(D)(2).

(emphasis added).

Section 330-50(D)(2)(A) provides that the Planning Board:

Shall be empowered to issue a permit for the construction of buildings or other structures customarily accessory and incident to agricultural production as the same is or shall hereafter be defined in §301 of the New York State Agriculture and Markets Law, in accordance with the following procedure:

(a) An application for a construction permit shall be filed with the Planning Board and shall be processed in accordance with the same procedural and submission requirements for site plan review pursuant to §§330-183 through 330-184 of this Chapter.

(b) In addition to all other required site plan referrals, the Planning Board shall refer an application for a farmland construction permit to the Agricultural Advisory Committee for its report and recommendations.

As noted above, Justice Martin considered these provisions and concluded that the Town Code authorized the Planning Board and the AAC to exercise site plan view of the Plaintiff's proposals. The Court agrees with this aspect of the Justice Martin's decision, and the Plaintiff does little to dispute the underlying finding on the merits.

In sum, the Court finds that the Individual Defendants are entitled to qualified

immunity with regard to the claim that they unlawfully subjected the Plaintiff to site plan review. This is because they cannot be deemed to have violated "clearly established law" under the Town Code. Further, even if they could be deemed to have violated "clearly established law," the Court finds that their actions were objectively reasonable under the circumstances.

The Plaintiff contends that Justice Martin did not render a decision on the full breadth of the constitutional violations asserted here, including related to the substantive decisions of the Defendants, which it asserts violated its substantive due process and equal protection rights.

The Defendants do not respond to this argument directly. Nor do the Defendants argue that because they had jurisdiction to exercise site plan review over the Plaintiff's application, the Plaintiff's constitutional claims arising thereunder are unreviewable by this Court. Rather, they claim that this Court's invitation to reconsider its ruling on qualified immunity concerned the issue of the Planning Board's jurisdiction. While this may be true, that argument does nothing to convince the Court that the Individual Defendants are entitled to qualified immunity, at least at this stage, for the substantive decisions of the Planning Board.

Accordingly, the Court grants in part the Defendants' motion for reconsideration to the extent it finds that the Individual Defendants are entitled to qualified immunity with regard to any claim that the Planning Board or AAC unlawfully subjected the Plaintiff to site plan review and dismisses any such claims against the Individual Defendants. However, at this stage of the litigation, the Court denies the Defendants' motion for reconsideration as to the remaining claims against the Individual Defendants.

### III. CONCLUSION

Based on the foregoing reasons, the Court grants in part and denies in part the Defendants' motion for reconsideration of the August 19, 2014 order. The Court grants the motion to the extent it finds that the Individual Defendants are entitled to qualified immunity with regard to any claim that the Planning Board or AAC unlawfully subjected the Plaintiff to site plan review and dismisses any such claims against the Individual Defendants. The Court otherwise denies the motion, including as to the claims challenging the substantive decisions of the Planning Board.

**SO ORDERED.**

Dated: Central Islip, New York
April 8, 2015

___*Arthur D. Spatt*_____
  ARTHUR D. SPATT
United States District Judge